UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CIVIL ACTION NO. 5:20-CV-00436-DLB-EBA

JOHN CALVIN BUCKLEY, IV,                                                    PLAINTIFF,

V.                        **REPORT AND RECOMMENDATION**

KEVIN MAZZA,
*Warden, Green River Correctional Complex*,                          DEFENDANT.

\*\*\* \*\*\* \*\*\* \*\*\*

## I. INTRODUCTION

John Calvin Buckley, IV, a state prisoner, alleges that his imprisonment is unconstitutional. Through counsel, he brings this 28 U.S.C. § 2254 action and requests the Court to "order a hearing on this Petition, . . . enter an order vacating the state conviction and order a new trial."[1] [R. 1 at pg. 21].

## II. FACTS

In July 2010, a Commonwealth of Kentucky grand jury indicted Buckley for first-degree rape (KRS § 510.040), two counts of first-degree sodomy (KRS § 508.030), and second-degree unlawful imprisonment (KRS § 509.030). Later, for reasons detailed below, Buckley was also indicted for first-degree bail jumping (KRS § 520.070) and tampering with a prisoner-monitoring device (KRS § 519.070).

In a memorandum opinion affirming Buckley's convictions, the Kentucky Supreme Court

---

[1] This matter is captioned as Buckley v. Mazza. However, Scott Jordan, Warden of the Kentucky State Penitentiary, replaced Mazza, Warden of the Green River Correctional Complex, as the named Respondent in this action on September 20, 2021. [R. 38].

summarized the facts of this case:[2]

Buckley, who is from Colorado, served in the military as a U.S. Army Ranger and was on active duty from 1999 to 2006. As such, he was deployed to both Afghanistan and Iraq, receiving a Purple Heart for a shoulder wound and a Bronze Star. After his discharge from the Army, Buckley moved to Lexington, Kentucky to receive treatment for his shoulder.

While in Lexington, Buckley had relationships with two women, fathering three children with them. In 2008, Buckley met the victim, Jane [a pseudonym], and they began a relationship that lasted until the events in question. The two differed regarding the nature of that relationship; however, the following facts are not in dispute. During the course of the relationship, Buckley returned to Iraq as a private contractor, and Jane sent him photographs of her posing in various states of undress. When Buckley returned to Lexington, the two continued their relationship until March 2010, when they "broke up" for approximately one week. During the time period when they were not together, Jane had sexual relations with one of Buckley's friends, "Chicago Ben."

On May 28, 2010, Buckley learned that Jane had had sexual relations with Chicago Ben. Beginning late in the evening of May 28 and continuing through the early morning hours of May 29 the two exchanged multiple text messages regarding the state of their relationship, and Jane made numerous phone calls to Buckley. The text messages from Buckley consisted primarily of accusations that Jane had cheated and lied, with him referring to her as a "bitch" and a "whore." Buckley also threatened to post nude photos of Jane on the internet. For her part, Jane's messages stated that she and Buckley were not a couple when she had sex with Chicago Ben, which meant that she had not cheated. She asked Buckley to come to her residence to talk about the relationship, which he would not do. In response to Buckley's threat that he was going to post the photos on the internet, Jane threatened to commit suicide and asked Buckley to bring her a gun.

At approximately 10:30 the morning of May 29, Buckley called Jane and agreed to meet with her at his residence, the first floor apartment in a duplex. Buckley met Jane on the front porch and, because she was crying, the two went inside. They then engaged in oral, vaginal, and anal sex. Buckley testified that these activities were consensual and typical of their sexual relationship, with the exception of the anal sex, which he said was accidental. Jane testified that they were not consensual acts and that she had been forcibly compelled to participate. Approximately five minutes of their sexual activities that morning were captured on videotape.

Approximately one hour after their sexual activity ended, Jane left Buckley's residence, went home, and called 911. Officers responded and transported Jane to the hospital, where she was examined by a Sexual Assault Nurse Examiner, Susan Noel (Noel). Noel testified that her examination revealed bruising on the left side

---

[2] Both Buckley and the Commonwealth agree that the Kentucky Supreme Court's factual summary is accurate. [R. 20 at pg. 3]; [R. 36 at pg. 1].

of Jane's neck consistent with a bite and suction and bruising on the right side of her neck consistent with choking. Noel also found evidence of damage in and around Jane's anus.

Based on information obtained from Jane and Noel, the Emergency Response Unit (ERU) was dispatched to Buckley's residence where they executed arrest and search warrants. During a search of the residence, officers found a number of weapons, photographs, and several videos. A grand jury indicted Buckley for rape, sodomy, assault, and unlawful imprisonment. Following a three day trial, a jury convicted Buckley on all charges. We set forth additional background information as necessary below.

*Buckley v. Commonwealth*, 2013-SC-000749-MR, 2015 WL 2339921, at *1–2 (Ky. May 14, 2015).

The Kentucky Supreme Court also recited the evidence related to Buckley's rape and

sodomy charges:

### 1. Buckley's Version.

According to Buckley, after he and Jane went into his apartment, they had a lengthy discussion about their relationship. Jane asked him repeatedly why he did not love her and asked him not to post any photographs of her on the internet. Buckley pointed out to Jane that, if she loved him, she would not have had sex with Chicago Ben. However, he refused to "engage" in a discussion about the photographs and asked her to leave several times. Because Jane continued to lie about her relationship with Chicago Ben and refused to leave, Buckley became agitated. At some point in the discussion, the topic of sex was broached, and Buckley told Jane that he was "horny," and she led him to the bedroom. As was customary, Jane got on her knees and began performing oral sex on Buckley. Buckley got out the video camera and videotaped Jane performing oral sex on him, during which he made disparaging comments about her, called her names, and slapped her on the face. According to Buckley, these actions, although "horrible," were not out of the ordinary for the two of them.

After several minutes of oral sex, Jane leaned over the side of the bed, and they began having vaginal sex. At some point, Jane's phone rang. She stated that it was her father calling, but she did not answer the phone. Shortly thereafter, Buckley penetrated Jane's anus causing her to scream and cry loudly. Buckley stated that this was accidental as neither he nor Jane enjoyed anal sex.

The videotaping stopped at that point. Buckley testified that he and Jane then got on the bed and engaged in vaginal sex in various positions. After they finished, Jane went to the bathroom and got back in bed with Buckley. They continued to discuss their relationship and the photographs, and Buckley took Jane's phone and looked at her call and text history to prove that she had been lying to him. Shortly thereafter, Jane left.

Buckley testified that he never threatened Jane, that he would have stopped if she had said stop, and that Jane was free to leave whenever she wanted. When the police arrived the next morning, Buckley was shocked to learn that Jane had accused him of rape.

As to the nature of their relationship, Buckley stated that it initially was only sexual. However, in the final three or four months, he began to care for Jane. We note that this description of the relationship is significantly different from Buckley's testimony before the grand jury wherein he said the relationship was never anything more than sexual.

## 2. Jane's Version.

Jane testified that she had not intended to go to Buckley's apartment that morning. However, she did so when he called her and told her that if she wanted to stop him from posting the photos online she had to meet with him and talk. When she arrived, she was upset and crying because of Buckley's threat to post the photos online. They went inside the apartment, and she followed Buckley into his bedroom.

Buckley, who was eating cereal, put the bowl down and picked up a video camera. When Jane asked him what he was doing, he said, "It doesn't matter. Get on your knees bitch." Jane testified that Buckley was extremely angry and, after he ordered her to get on her knees a second time, she complied. Jane testified that she was terrified that Buckley would hurt or possibly kill her because he had never spoken to her in that tone of voice or looked at her that way before.

While Jane was performing oral sex, Buckley asked her a number of questions and, when she did not respond to one question quickly enough, he slapped her on the face. After asking several more questions, Buckley told her to bend over the bed, which she did, and they began having vaginal intercourse. He gave Jane the video camera and told her to videotape her face, which she did. At one point, Buckley penetrated her anally and she screamed in pain. Buckley then took the video camera from Jane and stopped recording. According to Jane, after Buckley stopped recording he told her that if she did not "stop fucking crying and fucking shaking . . . [he was] only going to fuck [her] in the ass." The two eventually got onto the bed and continued to have vaginal intercourse in various positions, during which Buckley choked Jane and bit her on the neck.

Jane admitted that she and Buckley had often called each other derogatory names in the past and that he had occasionally smacked her on the "behind" when they had sex. She also admitted that they had made videotapes of their sexual encounters in the past. However, those activities were playful while this was not.

Jane testified that the only other time she had seen Buckley as angry as he was that morning was when he got into a fight with five other men outside a bar. According to Jane, Buckley soundly beat all five of the men, inflicting significant physical

damage on them.

When asked why she was crying on the video, Jane said it was because she was afraid and was being raped, not because Buckley had ended their relationship. Furthermore, she said that she did not want to engage in sexual relations with Buckley that morning, derived no pleasure from the encounter, and only participated out of fear. Finally, Jane noted that Buckley had a number of weapons, including a handgun that was in a small gun safe near the bed. According to Jane, Buckley had shown her how he could access the gun in several seconds, even when it was locked in the safe.

### 3. The Videotapes.

The jury saw three videotapes of Jane and Buckley's sexual encounters: the video discussed above, which was approximately five minutes long; and two videotapes from other sexual encounters, which are approximately 10 and 27 seconds in length.

The two short videos show Buckley and Jane engaged in vaginal intercourse. In one, Buckley calls Jane a "porn star" and encourages her to call him "daddy." In the other, Buckley calls Jane a "whore" and she says, "I'm such a little whore." Jane is not crying in either video.

In the five minute video, while Jane is performing oral sex on Buckley, he calls her a "fucking skank," a "piece of shit," a "whore," and a "dumb bitch;" asks her if she enjoys the "taste" of another woman; slaps her on the side of the head when she does not respond quickly enough; orders her to perform "the right fucking way;" and tells her that he is going to let "all kinds of guys fuck" her. Buckley then orders Jane to disrobe and bend over the bed and they begin having vaginal intercourse. Shortly thereafter, Buckley gives the camera to Jane and orders her to videotape her face, telling her to "do the fucking camera right or I will smack you." Buckley asks Jane what she is going to do from then on, she says that she will do whatever he wants, and he then continues to berate her. When Buckley anally penetrates Jane, she screams and begins to cry loudly. Buckley asks her what is wrong with her then he mocks her crying, tells her to get up on the bed, and stops the recording.

. . .

Jane is slightly more than five feet tall and weighed approximately 100 pounds. Buckley is six feet two inches tall and weighed approximately 200 pounds. Jane testified that she had only seen Buckley as angry as he was that morning the night he severely beat five men. Although they had previously engaged in playful rough sex and name calling, Buckley had never treated her the way he did that morning, and he had never slapped her in the face. The tone of Buckley's voice on the five minute video is significantly different from his tone of voice on the two shorter videos. Furthermore, in the five minute video, Jane can be heard crying, sobbing, and, at the end, screaming, clearly different reactions from what she displayed on the shorter videos. Buckley can be seen in the five minute video pulling Jane's hair,

and Jane testified that Buckley choked her and bit her, which was not a normal part of their sexual activity. Finally, although there were no guns visibly present, Jane testified that Buckley kept a pistol in a gun safe near his bed and that he could open the safe and access the gun within seconds.

*Id.* at *2–4, 6.

At the conclusion of trial, during jury deliberation, "Buckley, who was out on bond, removed his electronic monitoring device and fled. He was captured approximately one year later in Wyoming and, after being returned to Kentucky, Buckley pled guilty to First Degree Bail Jumping and Tampering with a Prisoner Monitoring Device." *Id.* at *1.

The jury found that Buckley should be sentenced to ten years each for first-degree rape and the two counts of first-degree sodomy, and twelve months each plus fines for the two misdemeanor offenses of fourth-degree assault and second-degree unlawful imprisonment. It also recommended that the ten year "sentence for first-degree rape run consecutively to concurrent sentences for the other offenses, for a total of 20 years' imprisonment." [R. 20 at pg. 11]. As to bail jumping and tampering, the Commonwealth offered three and one years, respectively. Buckley pled guilty to those charges.

The Commonwealth's sentencing recommendation was accepted by the trial court, however, it opted to run Buckley's felony sentences consecutively, with concurrent sentences for the misdemeanor offenses. In all, the trial court sentenced Buckley to 34 years' imprisonment.

### III. PROCEDURAL HISTORY

Buckley's post-conviction history is extensive.

*First*, Buckley attacked his convictions on direct appeal. There, through appointed counsel, he argued that: (1) the Commonwealth did not prove forcible compulsion; (2) the Commonwealth introduced evidence of other acts under Ky. R. Evid. 404(b) that it should not have; (3) the trial court did not allow him to introduce evidence of the victim's sexual history and earlier exposure to firearms; and (4) the trial court failed to remove two jurors for cause. [R. 20-3 at pgs. 128–84].

The Kentucky Supreme Court affirmed Buckley's conviction in May 2015. [*Id.* at pgs. 267–95]; *Buckley*, 2013-SC-000749-MR, 2015 WL 2339921. Buckley did not petition the Kentucky Supreme Court for a rehearing, nor the Supreme Court of the United States for a writ of certiorari.

*Second*, Buckley unsuccessfully petitioned Kentucky Governor Steve Beshear for a gubernatorial pardon and commutation of his sentence. [R. 20-4 at pg. 60].

*Third*, Buckley filed a *pro se* motion for relief under Ky. R. Civ. P. 60.02(f) in Fayette County Circuit Court. [R. 20-4 at pgs. 1–6]. In it, he alleged that: (1) material elements of offenses were omitted in the indictment; (2) the trial court erred by refusing to follow the jury's sentencing recommendation to run the felonious sentences concurrently; and (3) cumulative error. [*Id.*].

*Fourth*, Buckley retained counsel who filed a "Motion to Vacate, Set Aside, or Correct Judgment and Sentence Pursuant to RCr 11.42 and Supplement to CR 60.02 on Grounds of Reasons of Extraordinary Nature Justifying Relief." [*Id.* at pgs. 26–57]. In this motion, Buckley's post-conviction counsel dedicated several pages of "Factual Background" to noting ways he thinks that Buckley's trial counsel and other previous counsel were ineffective. [*Id.* at pgs. 36–44]. Of those ways that he thought Buckley's earlier counselors were ineffective, he addressed just seven in the motion's argument. Those were:

(1) The trial attorney failed to request a continuance or dismissal of the charges when the Commonwealth hid JR's statement until four days before the trial, and thus was ineffective in his representation of Buckley. [*Id.* at pg. 46].

(2) The trial attorney failed to use peremptory strikes, express his desire to use peremptory strikes, or move to strike jurors who showed signs of bias and a tendency not to follow directions, and thus was ineffective in his representation of Buckley. [*Id.* at pg. 47].

(3) The trial attorney chose a strategy that any lawyer of ordinary training and skills would have known to be greatly offensive to the jury, and thus was ineffective in his representation of Buckley. [*Id.* at pg. 49].

(4) The trial attorney failed to prepare edited versions of videos and audio recordings, trusting opposing counsel to do it for him, and thus was ineffective

in his representation of Buckley. [*Id.* at pg. 50].

(5) The trial attorney failed to move to suppress evidence and statements which may have unfairly prejudiced Buckley, and thus was ineffective in his representation of Buckley. [*Id.* at pg. 51].

(6) The trial attorney failed to prepare any exhibits, lay witnesses, or expert witnesses for trial, and thus was ineffective in his representation of Buckley. [*Id.* at pg. 54].

(7) The trial attorney failed to investigate or put on any meaningful mitigating evidence, and thus was ineffective in his representation of Buckley. [*Id.* at pg. 55].

The Fayette County Circuit Court found "that the arguments [were] without merit" and denied Buckley's motions. [*Id.* at pg. 335].

*Fifth*, Buckley appealed the denial of his motions for post-conviction relief. [*Id.* at 339–68]. Once again, Buckley's counsel recited numerous purported deficiencies with Buckley's prior counselors in the background section of his appellate brief. [*Id.* at pgs. 349–54]. And, once again, only a select few were addressed in the brief's argument. On appeal, he argued that the trial court should not have dismissed his motions because his counsel was ineffective for: (1) inadequately presenting a defense about his and Jane's BDSM sexual preferences; (2) failing to move to suppress prejudicial evidence about (a) his guns, (b) the ERU video of his arrest, and (c) his multiple sexual partners; (3) failing to prepare for trial and to raise procedural objections; and (4) failing to introduce any mitigating evidence. [*Id.* at pgs. 358–68]. The Kentucky Court of Appeals was unconvinced, and it affirmed dismissal. [*Id.* at pgs. 513–24]; *Buckley v. Commonwealth*, 2018-CA-000894-ZMR, 2019 WL 4565236 (Ky. App. Sept. 20, 2019).

*Sixth*, Buckley moved the Kentucky Supreme Court for discretionary review. It denied the motion. [*Id.* at pg. 525].

*Seventh*, Buckley filed this Section 2254 petition on October 13, 2020. [R. 1]. After a few

extensions, the Commonwealth filed its 115-page answer on March 10, 2021.[3] [R. 20]. After even more extensions, Buckley filed his 15-page reply on August 13, 2021. [R. 36]. The petition is ripe for review.

## IV. STANDARD OF REVIEW

This Court is required to review Buckley's request for habeas corpus relief pursuant to the standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). The AEDPA allows state prisoners to seek federal habeas corpus relief on the ground that they are in custody in violation of the Constitution, law, or treaties of the United States. 28 U.S.C. § 2254(a); *Reed v. Farley*, 512 U.S. 339, 347 (1994). The AEDPA states:

> An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2).

The AEDPA's demanding standard of review only applies to claims that were adjudicated in state court *on the merits*. Consequently, before addressing the merits of any claim in this habeas petition, the Court must first find that certain procedural requirements are present. The AEDPA mandates that state courts should enjoy the first opportunity to cure a constitutional claim. This rule stems from the understanding that state courts are obligated to follow federal law and from the desire for comity between the state and federal court systems. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844–45 (1999).

---

[3] Including exhibits, the Commonwealth's answer is 946 pages long.

When it included these standards in the AEDPA, Congress recognized the foundational principle that "[s]tate courts are adequate forums for the vindication of federal rights." *Burt v. Titlow*, 571 U.S. 12, 19, 20 (2013). So, Congress has limited the availability of federal habeas relief "with respect to any claim" the state courts "adjudicated on the merits." 28 U.S.C § 2254(d). That means, for this Court to grant Buckley's petition, Buckley must establish that the state court based its decision on either a "contrary" or an "unreasonable application" of Federal law, or that the decision was "based on an unreasonable determination of facts in light of the evidence presented in the State court proceeding." 28 U.S.C § 2254(d)(1)–(2).

A state court adjudication is "contrary" to United States Supreme Court precedent under 28 U.S.C. § 2254(d)(1) if the state court "arrives at a conclusion opposite to that reached by the [United States Supreme Court] on a question of law or if the state court decides a case differently than the [United States Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state court adjudication is an "unreasonable" application of Federal law if the state court "identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." *Id.* Where "[n]o precedent of [the United States Supreme Court] clearly forecloses" a state court's ruling, it simply cannot be an unreasonable application of United States Supreme Court precedent. *Woods v. Etherton*, 578 U.S. 113, 118 (2016) (per curiam).

A court may not grant federal habeas relief just by concluding that the relevant state court decision applied clearly established federal law erroneously or incorrectly—the "application must also be *unreasonable*." *Williams*, 529 U.S. at 411 (emphasis added). An unreasonable application of clearly established federal law occurs when the challenged state court ruling rested on "an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Metrish v. Lancaster*, 569 U.S. 351, 358 (2013). Further, "a state-court's factual

determination is not unreasonable merely because the federal habeas court would have reached a different conclusion[.]" *Burt*, 571 U.S. at 181. Importantly, the federal court is "limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

Federal courts do not analyze a petitioner's claim *de novo* under Section 2254. That means this Court must grant the state court deference in reviewing Buckley's petition. The state court's factual determinations "are presumed correct absent clear and convincing evidence to the contrary." 28 U.S.C. § 2254(e)(1). So, the Court must give complete deference to evidence-supported state court findings of fact pursuant to the presumption of correctness. *Id.* A state court decision, adjudicated on the merits based on a factual determination, will not be overturned on factual grounds unless objectively unreasonable considering the evidence presented in the state-court proceeding. 28 U.S.C. § 2254(d)(2); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). Thus, "a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [the United States Supreme Court's] precedents." *Nevada v. Jackson*, 569 U.S. 505, 508 (2013) (per curiam) (internal quotation marks omitted). Note that "circuit precedent does not constitute clearly established federal law" under the AEDPA. *Parker v. Matthews*, 567 U.S. 37, 48 (2012).

In sum, the AEDPA creates "a highly deferential standard for evaluating state-court rulings," and demands that "state-court decisions be given the benefit of the doubt." *Davis v. Lafler*, 658 F.3d 525, 530 (6th Cir. 2011). The AEDPA erected a "formidable barrier" to federal habeas corpus relief for those state prisoners whose claims were fully adjudicated in state court, requiring they show that the state court's ruling "was so lacking in justification that there was an error . . . beyond any possibility for fair-minded disagreement." *Burt*, 571 U.S. at 20 (quoting

*Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

## V. ANALYSIS

Buckley's Section 2254 petition presents two grounds for relief. *First*, Buckley enumerates 35 claims of ineffective assistance of counsel.[4] [R. 1 at pgs. 6–12]. *Second*, he asserts prosecutorial misconduct.[5] [R. 1 at pg. 13]. But before reviewing the merits, this Court must consider any applicable procedural-bar issue. *Lambrix v. Singletary*, 520 U.S. 518, 524 (1997). Accordingly, the Court will first consider whether any of Buckley's subclaims are procedurally defaulted. Next, the Court will determine whether Buckley shows cause and prejudice to preserve review of any procedurally defaulted claims. Finally, the Court will review any remaining subclaims on the merits.

## A. MOST OF BUCKLEY'S SUBCLAIMS ARE PROCEDURALLY DEFAULTED.

"Procedural default is a threshold rule that a court generally considers before reviewing the applicable law and available remedies in a habeas petition." *Lovins v. Parker*, 712 F.3d 283, 294 (6th Cir. 2013). When there is procedural default, the federal courts are barred from reviewing the claim. *Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991). Procedural default occurs when:

> (1) the petitioner fails to comply with a state procedural rule; (2) the state courts enforce the rule; [and] (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim[.]

*Guilmette v. Howes*, 624 F.3d 286, 290 (6th Cir. 2010).

Put another way, when a petitioner fails to properly raise a claim in state court or fails to

---

[4] Originally, Buckley asserted 36 ineffective assistance of counsel claims. [R. 1 at pgs 7–10]. However, in Reply, he "withdr[e]w his claim regarding failure to file a motion to suppress." [R. 63 at pg. 14]. Of Buckley's remaining 35 ineffective assistance of counsel claims, each fall within one of three buckets: (1) pre-trial, [R. 1 at pg. 7]; (2) during trial, [R. 1 at pgs. 7–9]; and (3) at sentencing, [R. 1 at pgs. 9–10].

[5] Specifically, Buckley argues that the Assistant Commonwealth Attorney acted inappropriately by: (1) calling Buckley "a liar" and indicating that he lied "on at least nine occasions;" (2) stating "his opinion that J.R. (the victim) told the truth several times;" (3) informing the jury that Buckley is "guilty of count 1 and he is also guilty of other counts" and that "he is clearly guilty of all these counts[;]" and (4) harassing a "possible witness for" Buckley. [R. 1 at pg. 13].

pursue it through the state's ordinary appellate review process, that claim is procedurally defaulted. *Williams v. Mitchell*, 792 F.3d 606, 613 (6th Cir. 2015). Indeed, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845. So, in Section 2254 habeas actions, "a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule." *Lovins*, 712 F.3d at 295 (citation omitted); *see also Coleman*, 501 U.S. at 735 n.1.

    **1.  Ground One.**

In Ground One of his petition, Buckley asserts 35 subclaims of ineffective assistance of counsel. The way Buckley sees it, he exhausted all but one of these subclaims: that trial counsel failed to object to the prosecutor's closing argument. This subclaim was not exhausted, Buckley argues, because of ineffective assistance of trial, appellate, and post-conviction counsel. [R. 1 at pg. 6]; *see* [R. 20 at pg. 108].

But, contrary to Buckley's assertion, most of his ineffective assistance of counsel subclaims are unexhausted. It is true that Buckley's post-conviction and appellate motions and briefs are packed with factual allegations resembling the ineffective assistance of counsel claims advanced in his Section 2254 petition, but only a select few made their way into argument. *Compare* [R. 20-4 at pgs. 27–45], *with* [*Id.* at pgs. 46–56]. When the Commonwealth addressed those perceived ineffective assistance of counsel claims in response back in state court, Buckley's counsel made it quite clear in reply that he was "not claiming that every fact listed in his Factual Background section amounts to ineffective assistance of counsel[,]" and that his actual claims are found in "the true Argument" section. [R. 20-4 at pgs. 317–18]. Consequently, the subclaims raised in the subject petition that were not raised in argument on appeal were "abandon[ed] and/or

waive[d][.]" *Prescott v. Commonwealth*, 572 S.W.3d 913, 927 (Ky. App. 2019). As the Commonwealth put it in its Answer to the subject petition, those subclaims "were included as background information but not actually argued as claims for relief[,]" so "*they were in no way fairly presented to the state courts*." [R. 20 at pg. 21] (emphasis in original).

Buckley only fully presented Subclaims 2, 4, 6, 9, 10, 27, and 28 of Ground One to the state court. "In general, RCr 11.42 gives a person one, and only one, opportunity to 'state all grounds for holding the sentence invalid. Generally, a second such motion is not allowed." *McDaniel v. Commonwealth*, 495 S.W.3d 115, 121 (Ky. 2016) (quoting RCr 11.42(3)); *see Gross v. Commonwealth*, 648 S.W.2d 853, 856 (Ky. 1983); *McQueen v. Commonwealth*, 949 S.W.2d 70 (Ky. 1997)). Buckley already exhausted his one RCr 11.42 opportunity in state court. Because Buckley cannot return to state court to develop his other ineffective assistance of counsel subclaims—claims that were not presented to the state court the first time—the claims are "procedurally defaulted" for failure to "exhaust state court remedies" since "the remedies are no longer available" to him "because of a state procedural rule." *Lovins*, 712 F.3d at 295; *see also Coleman*, 501 U.S. at 735 n.1. Accordingly, Subclaims 1, 5, 7, 8, 11, 12, 13, 14, 15, 18, 19, 21, 22, 23, 24, 29, 30, 31, 32, 34, and 35 of Ground One are procedurally defaulted for Buckley's failure to present them to the state court.[6] *See O'Sullivan*, 526 U.S. at 842; *Slaughter v. Parker*, 450 F.3d 224, 235–36 (6th Cir. 2006).

But that is not all. Subclaims 3, 16, 17, 20, 25, 26, and 33 of Ground One are procedurally defaulted for lack of specificity. Kentucky Rule of Criminal Procedure 11.42 demands a movant to "state specifically the grounds on which the sentence is being challenged and the facts on which

---

[6] Although Buckley argued Subclaims 5, 8, 19, 22, and 24 of Ground One in his RCr 11.42 motion in state court, he abandoned those arguments when appealing the Fayette County Circuit Court's denial of his RCr 11.42 motion to the Kentucky Court of Appeals. *Compare* [R. 20-4 at pgs. 49–50], *with* [*Id.* at 358–68]. Because Buckley failed to exhaust his state court remedies, Subclaims 5, 8, 19, and 24 are procedurally defaulted. *See O'Sullivan*, 526 U.S. at 842; *Slaughter*, 450 F.3d at 235–36.

the movant relies in support of such grounds." KY. R. CRIM. P. 11.42(2); *Roach v. Commonwealth*, 358 S.W.3d 131, 140 (Ky. 2012). Buckley failed to do so. The Kentucky Court of Appeals concluded that these claims of Buckley's were "conclusory and fail[] to meet the rule's specificity standard." *Buckley*, 2019 WL 4565236, at *3. Consequently, the Kentucky Court of Appeals did not review those subclaims for ineffective assistance of counsel. *See id.* Put another way, although Buckley's subclaims were, in a sense, before the state court, the merits of his subclaims never reached the state court. As the Kentucky Court of Appeals was precluded from reviewing Buckley's subclaims "because of a state procedural rule[,]" the subclaims are procedurally defaulted. *Lovins*, 712 F.3d at 295; *Hodge v. Haeberlin*, 579 F.3d 627, 638–39 (6th Cir. 2009) (holding that "Kentucky's determination that Hodge failed to properly plead his claim [in accord with RCr 11.42] precludes review by this court absent a showing of cause . . . and prejudice to the petitioner."). Accordingly, Subclaims 3, 16, 17, 20, 25, 26, and 33 of Ground One are procedurally defaulted for lack of specificity. *See id.*

In all, Subclaims 1, 3, 5, 7, 8, 11, 12, 13, 14, 115, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 29, 30, 31, 32, 33, 34, and 35 of Ground One are procedurally defaulted. So, they are not subject to review unless he can show cause and prejudice, which will be addressed *infra*.

## 2. Ground Two.

In Ground Two of his petition, Buckley asserts two subclaims of prosecutorial misconduct. He concedes that these were not presented to the state court. *See* [R. 1 at pg. 14]. In fact, when he filed his petition in October 2020, Buckley indicated that he would "request a stay of this proceeding and a remand to state court to seek exhaustion of" the prosecutorial misconduct issues. [*Id.*].

Buckley did not request a stay during the two years of his petition's pendency, nor is he entitled to an opportunity to present his prosecutorial misconduct claims in state court: "In general,

RCr 11.42 gives a person one, and only one, opportunity to 'state all grounds for holding the sentence invalid. Generally, a second such motion is not allowed." *McDaniel*, 495 S.W.3d at 121 (quoting RCr 11.42(3)); *see Gross*, 648 S.W.2d at 856; *McQueen*, 949 S.W.2d at 70. Buckley already exhausted his one RCr 11.42 opportunity in state court. Because Buckley cannot return to state court to develop his prosecutorial misconduct claims—claims that were not presented to the state court the first time—the claims are "procedurally defaulted" for failure to "exhaust state court remedies" since "the remedies are no longer available" to him "because of a state procedural rule." *Lovins*, 712 F.3d at 295; *see also Coleman*, 501 U.S. at 735 n.1. Accordingly, Ground Two of Buckley's petition—containing two subclaims of prosecutorial misconduct—is procedurally defaulted. *See O'Sullivan*, 526 U.S. at 842; *Slaughter*, 450 F.3d at 235–36.

## B. BUCKLEY FAILS TO SHOW CAUSE AND PREJUDICE FOR HIS DEFAULTED SUBCLAIMS.

Nonetheless, a Section 2254 petitioner may secure review of an otherwise procedurally defaulted state claim if he can show cause and prejudice. *Caver v. Straub*, 349 F.3d 340, 346 (6th Cir. 2003). Cause is shown when "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Cvijetinovic v. Eberlin*, 617 F.3d 833, 837 (6th Cir. 2003) (quoting *Murray v. Carrier*, 477 U.S. 478, 484 (1983)). "When a petitioner fails to establish cause to excuse a procedural default, a court does not need to address the issue of prejudice." *Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir. 2000) (citations omitted).

"Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." *Martinez v. Ryan*, 566 U.S. 1, 17 (2012). However, "ineffective assistance of post-conviction counsel cannot supply cause for procedural default of a claim of ineffective assistance of appellate counsel." *Hodges v.*

*Colson*, 727 F.3d 517, 531 (6th Cir. 2013); *see also West v. Carpenter*, 790 F.3d 693, 698 (6th Cir. 2015) (*Martinez* did "not apply to [Petitioner's] defaulted conflict-of-interest claim because he raised that claim at the post-conviction initial-review proceeding and failed to preserve it on appeal.").

In total, Buckley presents 28 procedurally defaulted subclaims in Ground One of his Section 2254 petition and two procedurally defaulted subclaims under Ground Two. But, troublingly, Buckley's Section 2254 petition and reply brief fail to show cause for his failure to exhaust these subclaims in state court. As to the 28 procedurally defaulted ineffective assistance of counsel claims, it is not enough that Buckley's post-conviction counsel, Daniel Canon, did not argue these factual allegations in Buckley's post-conviction review and appeal process in Kentucky state court. Even assuming—without finding—that Canon's counsel was ineffective, "ineffective assistance of post-conviction counsel cannot supply cause for procedural default of a claim of ineffective assistance of appellate counsel." *Colson*, 727 F.3d at 531; *see also West*, 790 F.3d at 698. Without a showing of cause, this "court does not need to address the issue of prejudice." *Simpson*, 238 F.3d at 409. Absent a showing of cause and prejudice, Buckley's 28 procedurally defaulted subclaims under Ground One fail.

Similarly, Buckley's two procedurally defaulted subclaims under Ground Two must fail. Although Buckley blames his failure to exhaust these claims in state court on the ineffectiveness of post-conviction and appellate counsel, that is not enough to show cause. *See Colson*, 727 F.3d at 531; *West*, 790 F.3d at 698. Absent cause, there is no need to consider prejudice. *Simpson*, 238 F.3d at 409. Therefore, Ground Two of Buckley's petition fails.

## C.  BUCKLEY'S REMAINING SUBCLAIMS FAIL ON THE MERITS.

Although the bulk of Buckley's subclaims are disposed of due to procedural error, a few remain to be resolved on the merits. Those are Subclaims 2, 4, 6, 9, 10, 27, and 28 of Ground One.

All assert ineffective assistance of counsel.

To successfully assert ineffective assistance, Buckley must show two essential elements for each subclaim: (1) deficient performance by counsel and (2) how "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984) (stating that "[u]nless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable").

*First*, regarding deficient performance, reviewing courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance." *Id.* To show that representation fell below an objective standard of reasonableness, Buckley must articulate specific acts or omissions that demonstrate how counsel's performance fell "outside the wide range of professionally competent assistance." *Id.* at 690. In other words, Buckley bears the burden of showing that his counsel "made errors so serious that the counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. While reviewing Buckley's ineffective assistance of counsel claims, the Court must make "every effort" to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689.

*Second*, Buckley must also establish prejudice by showing that there is a reasonable probability that, but for counsel's unprofessional errors, the result of his proceedings would have been different. *Id.* at 694–95. "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. 86, 111–12 (2011) (citing *Strickland*, 466 U.S. at 696)). "When deciding ineffective-assistance claims, courts need not address both components of the [deficient performance and prejudice] inquiry 'if the defendant makes an insufficient showing on one.'" *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004); *Strickland*, 466 U.S. at 697.

Further, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (quoting *Strickland*, 466 U.S. at 691). "Counsel is constitutionally ineffective only if performance below the professional standards caused the defendant to lose what he otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

Further, in the Section 2254 context, this Court owes a sort of double deference to the state court: "The standards created by *Strickland* and § 2254(d) are both highly deferential . . . and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (cleaned up). This means that the "pivotal question" here "is whether the state court's application of the *Strickland* standard was unreasonable[,]" not "whether defense counsel's performance fell below *Strickland*'s standard." *Id.* at 101 (citations omitted). An unreasonable application of clearly established federal law occurs when the challenged state court ruling rested on "an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Metrish*, 569 U.S. at 358. Further, "a state-court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion[.]" *Burt*, 571 U.S. at 181. Importantly, in making this determination, the Court is "limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen*, 563 U.S. at 181.

Because Buckley sufficiently presented seven of his ineffective assistance of counsel subclaims to the state court, this Court will review each in turn.

**1. Ground One.**

**I. Subclaim No. 2:** During pre-trial hearings trial counsel agreed to permit the Commonwealth to edit videos (two provided to it by trial counsel) and one seized without a search warrant to be exhibited to the jury as evidence of sexual activity involving Petition[sic] and the alleged victim.
[R. 1 at pg. 7].

For Buckley's ineffective assistance claim to prevail in state court, he must have shown that court that his counsel "was so *manifestly* ineffective that defeat was snatched from the hands of probable victory." *Morrow*, 977 F.2d at 229 (emphasis in original). He made no such showing. *Buckley*, 2019 WL 4565236, at *2. In addressing this subclaim, the Kentucky Court of Appeals noted that Buckley "fail[ed] to explain how the result of the trial would have differed had counsel" "prepare[d] its own clips or review[ed] the Commonwealth's clips before they were played at trial[.]" *Id.* Put another way, "Buckley advance[d] nothing of substance in support of his contention" that his counsel was ineffective. *Id.* So, Buckley failed to demonstrate "prejudic[e]" or deficient performance. *Id.* (referencing *Strickland*, 466 U.S. at 694).

Recall that this Court is tasked only with considering "whether the state court's application of the *Strickland* standard was unreasonable." *Harrington*, 562 U.S. at 101. For this Court to find that the state court unreasonably applied *Strickland*, it must first find that the state court's ruling rested on "an error well understood and comprehended in existing lay beyond any possibility for fair-minded disagreement." *Metrish*, 569 U.S. at 358. Reviewing the state court's decision, "limited to the record that was before the state court that adjudicated the claim on the merits[,]" the Court discerns no such error here. *Cullen*, 563 U.S. at 181. Nor does Buckley point to one. Therefore, this subclaim fails.

> **II. Subclaim No. 4:** The trial attorney did not use a peremptory strike, or formally identify that he would have used a peremptory strike if he had had more, when juror 3046 exhibited rule-breaking behavior and a disrespect for the directions of the court, failing to preserve the issue for appeal.
> [R. 1 at pg. 7].

Buckley sufficiently presented this subclaim to the state court but did not prevail. Specifically, the Kentucky Court of Appeals found neither deficient performance nor prejudice.[7]

---

[7] The Commonwealth states that the Kentucky Court of Appeals merely "comment[ed]" on *Strickland*'s application, it did not apply it. [R. 20 at pg. 47]. For support, the Commonwealth points to the Kentucky Court of Appeals' cite to

*First*, it highlighted that Buckley's counsel "used his peremptory strikes on another juror for reasons determined to be necessary and, but for the exhaustion of his peremptory strikes, would have removed one of the jurors." *Buckley*, 2019 WL 4565236, at *3 (quoting *Buckley*, 2015 WL 2339921, at *11) (quotation marks omitted). *Second*, it determined that Buckley failed to show that his "counsel's decision was not strategic" or "how the result of his trial would have differed had counsel removed these two jurors via peremptory strikes."[8] *Id.* (referencing *Strickland*, 466 U.S. at 694). *Third*, the Kentucky Court of Appeals declined "to construct Buckley's argument for him[.]" *Id.*

These are reasonable applications of the *Strickland* standard. *Metrish*, 569 U.S. at 358. Reviewing the state court's decision, "limited to the record that was before the state court that adjudicated the claim on the merits[,]" the Court discerns no error here. *Cullen*, 563 U.S. at 181. Nor does Buckley point to one. Because this Court is tasked only with considering "whether the state court's application of the *Strickland* standard was unreasonable[,]" this subclaim fails. *Harrington*, 562 U.S. at 101.

> **III. Subclaim No. 6:** The trial attorney allowed the Commonwealth Attorneys to prepare the "snippets" meant to show the similarities between the May 29, 2010 video and clearly consensual videos of Buckley and JR having sex. Then, he let the Commonwealth say that the defense provided the videos even though the trial attorney did not even watch them before they were shown to the jury.
> [R. 1 at pg. 7].

In addressing this subclaim, the Kentucky Court of Appeals noted that Buckley "fail[ed] to explain how the result of the trial would have differed had counsel" "prepare[d] its own clips or

---

*Prescott v. Commonwealth*, 572 S.W.3d 913, 924 (Ky. App. 2019). The Court disagrees with the Commonwealth. The Kentucky Court of Appeals seems to cite to *Prescott* only for the proposition that it can decline to construct arguments for parties. *See Buckley*, 2019 WL 4565236, at *2 ("We will not scour the record to construct Buckley's argument, 'nor will we venture to find support for his underdeveloped arguments.'") (quoting *Prescott*, 572 S.W.3d at 924). In disposing of Buckley's ineffective assistance of counsel claim, the Kentucky Court of Appeals does not cite or discuss RCr 11.42 but centers its entire discussion on *Strickland*'s application. Regardless, the result is the same: Buckley's subclaim fails.

[8] Further, on direct review, the Kentucky Supreme Court found that Buckley "failed to show how juror No. 3046's presence on the jury altered the outcome of his trial." *Buckley*, 2015 WL 2339921, at *12.

review[ed] the Commonwealth's clips before they were played at trial[.]" *Id.* Put another way, "Buckley advance[d] nothing of substance in support of his contention" that his counsel was ineffective. *Id.* So, Buckley failed to demonstrate "prejudic[e]" or deficient performance. *Id.* (referencing *Strickland*, 466 U.S. at 694).

This is a reasonable application of the *Strickland* standard. *Metrish*, 569 U.S. at 358. Reviewing the state court's decision, "limited to the record that was before the state court that adjudicated the claim on the merits[,]" the Court discerns no error here. *Cullen*, 563 U.S. at 181. Nor does Buckley point to one. Because this Court is tasked only with considering "whether the state court's application of the *Strickland* standard was unreasonable[,]" this subclaim fails. *Harrington*, 562 U.S. at 101.

> **IV. Subclaim No. 9:** The trial attorney did not move to have the [Emergency Response Unit] ERU video of Buckley's arrest completely excluded or object to its entry even though it was overly prejudicial and not at all probative. In fact, he told the court that he agreed it should be played for the jury.
> [R. 1 at pg. 7]

On direct appeal, the Kentucky Supreme Court held that admitting evidence related to the ERU entry and arrest of Buckley was erroneous. *Buckley*, 2015 WL 2339921, at *6–7. However, the Kentucky Supreme Court found that the trial court's error was harmless because, in the video,

> Buckley appears to be calm and cooperative, a demeanor that somewhat undercuts Jane's testimony that she had reason to fear Buckley. Thus, the ERU video may have benefitted Buckley as much as it harmed him. Furthermore, in light of the contents of the five minute video as discussed above, we cannot say that exclusion of the ERU video would have altered the result.

*Id.*

On post-conviction review pursuant to RCr 11.42, the Fayette County Circuit Court considered whether Buckley was prejudiced by his counsel's failure to seek the ERU entry and arrest video's exclusion. [R. 20-4 at pgs. 330–32]. The Fayette County Circuit Court agreed with the Kentucky Supreme Court that "there was no reasonable possibility of a different result if the

evidence had been excluded," so it found "that Buckley was not prejudiced by his trial counsel's failure to have the arrest video excluded." [*Id.*] *See Buckley*, 2015 WL 2339921, at *7.

On appeal from the Fayette County Circuit Court's denial of Buckley's RCr 11.42 motion, the Kentucky Court of Appeals opined that the Kentucky Supreme Court's prior holding precluded review through RCr 11.42. *Buckley*, 2019 WL 4565236, at *3. However, on direct appeal, the Kentucky Supreme Court considered *only* whether admitting the ERU video was erroneous under Kentucky Rule of Evidence 401 for want of relevance. *Buckley*, 2015 WL 2339921, at *7. Therefore, the Kentucky Supreme Court *did not consider* whether Buckley's counsel was ineffective for his failure to seek the video's exclusion. *See id.* So, in his RCr 11.42 motion, Buckley *did not* "raise [an] issue[] which [was] raised and decided on direct appeal[,]" as the Kentucky Court of Appeals opined.[9] *Buckley*, 2019 WL 4565236, at *3 (quoting *Wilson v. Commonwealth*, 975 S.W.2d 901, 903 (Ky. 1998)). Further, since the evidentiary issue was not preserved, the Kentucky Supreme Court reviewed it for palpable error (the Kentucky equivalent to plain error). *Buckley*, 2015 WL 2339921, at *7 (noting that the issue was not preserved for appeal). In Kentucky, a claim of palpable error "imposes a more stringent standard and a narrower focus than does an ineffective assistance claim" and "a failure to prevail on a palpable error claim does not obviate a proper ineffective assistance claim." *Martin v. Commonwealth*, 207 S.W.3d 1, 5 (Ky. 2006). For these reasons, the Kentucky Court of Appeals should have reviewed Buckley's ineffective assistance of counsel claim as the Fayette County Circuit Court did. *See* [R. 20-4 at pgs. 330–32].

Still, the Kentucky Court of Appeals error presents no hurdle to this Court. It is true that

---

[9] It seems the Kentucky Court of Appeals' mistook the issues presented to the Kentucky Supreme Court by Buckley on direct appeal. He did not raise any ineffective assistance of counsel claims on direct appeal. Rather, he solely challenged the video's admittance into evidence. The Kentucky Supreme Court's review was limited to that issue. The Kentucky Supreme Court's determination as to the admittance of evidence is not the same as a determination on whether counsel was ineffective in failing to seek its exclusion.

where a state court did not evaluate the merits of the underlying issue raised in a petition for a writ of habeas corpus, the federal court reviews the claim *de novo. Smith v. Cook*, 956 F.3d 377, 386 (6th Cir. 2020); *cf. Hodge*, 579 F.3d at 643. But, in the Section 2254 context, this Court should be especially hesitant to find that a state court failed to adjudicate a matter on the merits. *Smith*, 956 F.3d at 386; *Johnson v. Williams*, 568 U.S. 289, 301, 304 (2013). Rather, this Court should presume adjudication on the merits. This merits adjudication "presumption prevails even when the state court's opinion wholly omits discussion of the federal claim." *Smith*, 956 F.3d at 386. Further, the "presumption prevails when a state court *imperfectly discusses, rather than omits, a petitioner's federal claim*." *Id.* (referencing *McKinney v. Hoffner*, 830 F.3d 363, 368–69 (6th Cir. 2016)) (emphasis added). In *McKinney*, the state court addressed an "ultimate issue" without addressing a critical "threshold issue" relevant to the federal claim. *McKinney*, 830 F.3d at 368–69. Despite noting that the state court did not grapple with the "crux" of the petitioner's claim, the *McKinney* court still presumed that by addressing the ultimate claim, the state court rejected the threshold claims on the merits. *Id.*

The same logic controls here. The Fayette County Circuit Court reviewed this subclaim *on the merits*, and it relied on the Kentucky Supreme Court's holding concerning the impact that improperly admitting the ERU video had at trial. [R. 20-4 at pgs. 330–32]. On post-conviction appeal, the Kentucky Court of Appeals determined that further review of the ineffective assistance of counsel claim would violate principles of collateral estoppel—as the Kentucky Supreme Court already held that, despite being erroneously admitted, the ERU video did not impact the outcome at trial. *Buckley*, 2019 WL 4565236, at *3. The Kentucky Court of Appeals so found because it erroneously concluded that Buckley had already "raised . . . [the] issue" of whether his "counsel failed to move to suppress . . . the emergency response unit (ERU) arrest video . . . on direct appeal." *Id.* In other words, the Kentucky Court of Appeals "imperfectly discusse[d]" Buckley's

ineffective assistance of counsel claim. *Smith*, 956 F.3d at 386; s*ee McKinney*, 830 F.3d at 368–69. Although the Kentucky Court of Appeals erred by deferring to the Kentucky Supreme Court in this context, and in consequence it failed to grapple with the "crux" of the petitioner's ineffective assistance of counsel claim, it effectively deferred to a merits determination by the Kentucky Supreme Court as to one of the two ineffective assistance of counsel prongs: prejudice. *See id.*

Under *Strickland*, a petitioner must demonstrate both (1) deficient performance and (2) prejudice. *Strickland*, 466 U.S. at 687. And to show prejudice, the petitioner must demonstrate that his counsel "was so *manifestly* ineffective that defeat was snatched from the hands of probable victory." *Morrow*, 977 F.2d at 229 (original emphasis). The Kentucky Supreme Court determined that the ERU arrest video, although erroneously admitted, *did not affect the outcome of the trial*. *Buckley*, 2015 WL 2339921, at *7. The Fayette County Circuit Court, reviewing on the merits, agreed that the outcome would not have differed, so it concluded that Buckley suffered no prejudice: that is, he could not demonstrate that his counsel's failure to seek the video's suppression snatched probable victory from his hands. [R. 20-4 at pgs. 330–32]. The Kentucky Court of Appeals similarly deferred to the Kentucky Supreme Court's merit determination despite doing so for the wrong premise. *Buckley*, 2019 WL 4565236, at *3. For these reasons, it is clear to this Court that this subclaim was resolved on the merits, so the state courts are owed deference under *Richter*.

Where deference is owed, this Court is limited to determining "whether the state court's application of the *Strickland* standard was unreasonable." *Harrington*, 562 U.S. at 101. The Fayette County Circuit Court reasonably applied *Strickland*, and the Kentucky Court of Appeals' deference to the Kentucky Supreme Court's determination that the outcome of the trial would not have differed is similarly reconciled with *Strickland*'s prejudice prong. Consequently, this subclaim fails.

**V. Subclaim No. 10:** The trial attorney failed to object to the Commonwealth introducing all of Buckley's legally-owned guns into evidence in a very dramatic fashion. This was overly prejudicial as it made Buckley seem dangerous and not at all probative as the guns had not been present in the May 29, 2010 video. [R. 1 at pg. 8].

On direct appeal, the Kentucky Supreme Court held that admitting Buckley's guns into evidence was erroneous. *Buckley*, 2015 WL 2339921, at *6–7. However, the Kentucky Supreme Court found that the trial court's error was harmless because "there is no reasonable possibility that it contributed to the conviction." *Id.* at *7 (quoting *Anderson v. Commonwealth*, 231 S.W.3d 117, 122 (Ky. 2007)) (quotation marks omitted).

On post-conviction review pursuant to RCr 11.42, the Fayette County Circuit Court considered whether Buckley was prejudiced by his counsel's alleged failure to seek to suppress the guns. [R. 20-4 at pg. 330]. The Fayette County Circuit Court agreed with the Kentucky Supreme Court that "there [was] no reasonable possibility that it contributed to the conviction," so it found "that Buckley was not prejudiced by his trial counsel's failure in allowing such evidence to be admitted at trial." [*Id.*] (original modification); *see Buckley*, 2015 WL 2339921, at *7.

On appeal from the Fayette County Circuit Court's denial of Buckley's RCr 11.42 motion, the Kentucky Court of Appeals opined that the Kentucky Supreme Court's prior holding precluded review through RCr 11.42. *Buckley*, 2019 WL 4565236, at *3. However, on direct appeal, the Kentucky Supreme Court considered *only* whether admitting the guns was erroneous under Kentucky Rule of Evidence 401 for want of relevance. *Buckley*, 2015 WL 2339921, at *7. The Kentucky Supreme Court *did not consider* whether Buckley's counsel was ineffective for allegedly failing to seek exclusion of the guns. *See id.* So, in his RCr 11.42 motion, Buckley *did not* "raise [an] issue[] which [was] raised and decided on direct appeal[,]" as the Kentucky Court of Appeals opined. *Buckley*, 2019 WL 4565236, at *3 (quoting *Wilson v. Commonwealth*, 975 S.W.2d 901, 903 (Ky. 1998)). Still, for the same reasons expressed above, it effectively deferred to a merits

determination by the Kentucky Supreme Court as to one of the two ineffective assistance of counsel prongs: prejudice. *See id.*

At this point in the analysis, the Court pauses to note that, in addition to lack of prejudice as reasonably determined by the state courts, Buckley fails to show deficient performance. Buckley's assertion that his counsel failed to object is patently false. As appellate counsel noted in Buckley's brief for his direct appeal to the Kentucky Supreme Court, "[t]his issue [was] preserved." [R. 20-3 at pg. 161]. "The defense filed a motion objecting to" the guns being admitted into "evidence." [*Id.*]; *see* [*Id.* at pgs. 83–86]. And the Kentucky Supreme Court treated this subclaim of error as preserved for review. *Buckley*, 2015 WL 2339921, at *7.[10] For these reasons, this subclaim fails.

> **VI. Subclaim No. 27:** The trial attorney failed to fight the Commonwealth's tactic of putting Buckley's status as a veteran on trial. The Commonwealth waved Buckley's legally-obtained and safely-stored weapons in front of the jury, even pointing them at the jury, attempting to make Buckley out as a gun-obsessed nut. This was extremely prejudicial with no probative value. The Commonwealth managed to twist the jury's respect for a veteran who fought for their rights into a fear that as a tall, muscular man who knew how to handle a weapon and who served in the armed forces, any sex he had would involve implicit threat just because of who he is. If this was the standard, how would any veteran defend himself in a rape trial? Through this preposterous charade, the trial attorney sat passively.
> [R. 1 at pg. 9].

Before addressing this subclaim in full, the Court notes that the subclaim, in part, takes issue with Buckley's counsel's purported failure to object to the introduction of Buckley's guns into evidence. *See* [*Id.*] ("The Commonwealth waved Buckley's legally-obtained and safely-stored

---

[10] In Reply, through counsel, Buckley seems to suggest that the Kentucky Supreme Court's finding that "there was no reasonable possibility that [admitting the guns] contributed to the conviction" is "an unreasonable application of" *Chapman v. California*, 386 U.S. 18 (1967). [R. 36 at pg. 15]. *Chapman* stands for two propositions: (1) some constitutional errors are indeed harmless; and (2) federal law must govern the application of state harmless error rules. However, Buckley only asserts ineffective assistance of counsel as to this error, and his subclaim is undermined by the fact that his counsel *did* object and preserved the issue for appeal. So, *Chapman* is inapplicable here where only ineffective assistance of counsel is at issue. Because Buckley is represented by counsel, this Court declines to interpret his motion to include claims other those raised in the body of his motion. [R. 1].

weapons in front of the jury, even pointing them at the jury, attempting to make Buckley out as a gun-obsessed nut."). But, as discussed earlier, Buckley's counsel did object when the Commonwealth sought to introduce guns into evidence. So, to the extent Buckley again makes that claim here, the subclaim fails.

As to the Commonwealth's purported tactic of using Buckley's status as a veteran against him, on direct appeal the Kentucky Supreme Court determined that the relevant testimony was admissible. *Buckley*, 2015 WL 2339921, at *8. Specifically, it found that the victim's testimony about Buckley's "military experience" "was relevant to [her] state of mind, *i.e.* whether her fear of Buckley was credible." *Id.* The Kentucky Supreme Court also remarked that Buckley himself "testified, at least in part, about his military service during his grand jury testimony, and evidence about Buckley's military service may have benefitted him." *Id.* Importantly, this Court defers to the state court's interpretation of its own rules of evidence. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005)).

On post-conviction review, the Fayette County Circuit Court concurred with the Kentucky Supreme Court that "the fact that Buckley owned many firearms and served in the military was one of the reasons that the victim allegedly feared Buckley; thus, such evidence was relevant and not unduly prejudicial." [R. 20-4 at pg. 331–32]. For this reason, it concluded that "Buckley's trial counsel did not inadequately represent Buckley by not objecting to the admission of such evidence." [*Id.* at 332].

On appeal from the Fayette County Circuit Court's denial of Buckley's RCr 11.42 motion, the Kentucky Court of Appeals held that the Kentucky Supreme Court's prior holding precluded review through RCr 11.42. *Buckley*, 2019 WL 4565236, at *3. Indeed, the Kentucky Supreme Court had previously determined that the victim's testimony about Buckley's military service was properly admitted. *Buckley*, 2015 WL 2339921, at *8. Because the evidence was properly

admitted, Buckley's ineffective assistance of counsel claim concerning it would have been an impermissible collateral attack on the Kentucky Supreme Court's opinion. *See Prescott*, 572 S.W.3d at 922.

Further, Buckley fails to show deficient performance. Buckley's assertion that his counsel failed to object is patently false. As appellate counsel noted in Buckley's brief for his direct appeal to the Kentucky Supreme Court, "[t]his issue [was] preserved." [R. 20-3 at pg. 169]. "The defense filed an objection to the prosecutor's KRE 404(b) notice." [*Id.*]; *see* [*Id.* at pgs. 83–86]. And the Kentucky Supreme Court treated this subclaim of error as preserved for review. *Buckley*, 2015 WL 2339921, at *8. For these reasons, this subclaim fails.

> **VII. Subclaim No. 28:** The trial attorney failed to call, or even to investigate, any expert witness who could explain the nature of BDSM, polyamorous relationships, the implications (or lack thereof) of gun ownership, or the implications (or lack thereof) or prior military service as it relates to propensity for violence.
> [R. 1 at pg. 9].

Only one portion of this subclaim is not procedurally defaulted: that counsel failed to obtain an expert in alternative sexual practices to explain the nature of BDSM (bondage, discipline, and sadomasochism). *See* [R. 20-4 at pg. 55]; [R. 20-4 at pgs. 358–61].[11] Accordingly, this Court will review only that portion of this subclaim.

On post-conviction review, the Fayette County Circuit Court determined that "Buckley's counsel was not ineffective" by failing to retain an expert in alternative sexual practices, such as BDSM. [R. 20-4 at pg. 333]. It reached that conclusion for two reasons. *First*, Buckley did "not allege how this would have affected the result of the trial." [*Id.*]. *Second*, even if such an expert

---

[11] Buckley argues in his post-conviction motion that his counsel should have sought an expert to explain the implications of PTSD, [R. 20-4 at pg. 55], but he abandoned that argument on appeal from his motion's denial, [R. 20-4 at pgs. 358–61]. Although Buckley mentions in the factual background section of his post-conviction motion that his counsel failed to obtain experts to testify on the implications of gun ownership and prior military service, he did not raise them in argument. *Compare* [R. 20-4 at pgs. 27–45], *with* [*Id.* at pgs. 46–56]. Also, Buckley's post-conviction counsel stated unequivocally that only those purported subclaims of ineffective assistance of counsel that were discussed in the argument section of the motion were actually raised. [R. 20-4 at pgs. 317–18] (Buckley is "not claiming that every fact listed in his Factual Background section amounts to ineffective assistance of counsel.").

were obtained, the expert "could not have testified as to whether the victim in this case consented or that Buckley's actions concerning the rape were otherwise lawful." [*Id.*]. So, the Fayette County Circuit Court concluded that "the expert's testimony would not have aided Buckley in any meaningful way." [*Id.*]. By implication, the Fayette County Circuit Court found that Buckley did not satisfy the prejudice *Strickland* prong.

On appeal from the Fayette County Circuit Court's denial of Buckley's RCr 11.42 motion, the Kentucky Court of Appeals agreed with the Fayette County Circuit Court that Buckley "failed to show how this would have affected the result of the trial." *Buckley*, 2019 WL 4565236, at *2. For this reason, the Kentucky Court of Appeals concluded that "Buckley again fails to meet the *Strickland* standard[.]" *Id.* (referencing *Strickland*, 466 U.S. at 694). This is a reasonable application of the *Strickland* standard.

This is a reasonable application of the *Strickland* standard. *Metrish*, 569 U.S. at 358. Reviewing the state court's decision, "limited to the record that was before the state court that adjudicated the claim on the merits[,]" the Court discerns no error here. *Cullen*, 563 U.S. at 181. Nor does Buckley point to one. Because this Court is tasked only with considering "whether the state court's application of the *Strickland* standard was unreasonable[,]" this subclaim fails. *Harrington*, 562 U.S. at 101.

### D.  BUCKLEY'S REQUEST FOR AN EVIDENTIARY HEARING SHOULD BE DENIED.

In addition to his Section 2254 Petition, Buckley requested an evidentiary hearing. [R. 1 at pg. 21]. Although he requests an evidentiary hearing, Buckley concedes that the facts of this case adequately support his habeas petition. [R. 36 at pg. 1] (Buckley "agrees with the Statement of Facts and Procedural History set-forth in the Respondent's Return of Writ adding [additional] facts and procedures set-forth in Mr. Buckley's Brief of Appellant filed in the Kentucky Supreme Court," which is a part of the record).

28 U.S.C. § 2254(e)(2) permits a district court to conduct an evidentiary hearing so the petitioner may rebut the presumption of correctness of a state court's factual findings or to support a claim on which the state court has not made any pertinent factual findings. Pursuant to Habeas Rule 8(a), "[i]f the petition is not dismissed, the judge must review the answer, any transcripts and records of state-court proceedings, and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted." A determination of a factual issue by a state court shall be presumed correct, absent clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1). According to the AEDPA, if the petitioner failed to develop the factual basis of a claim in the state court proceedings, and the claims are not procedurally defaulted, then the court "shall not" hold an evidentiary hearing unless the claim (1) relies on a new, retroactive rule of constitutional law; or (2) relies on a factual predicate that could not have previously been discovered despite the exercise of due diligence; and (3) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense. 28 U.S.C. § 2254(e)(2). Thus, when a state court has not adjudicated a habeas petitioner's constitutional claims on the merits, the AEDPA severely restricts the capacity of a federal habeas court to conduct a hearing to develop the evidence relating to the claim.

To the extent the Court must evaluate for an evidentiary hearing under Habeas Rule 8(a), the Court perceives no need for one as to this petition, which conclusively shows that Buckley is entitled to no relief. 28 U.S.C. § 2254(e)(2); *Williams v. Taylor*, 120 S.Ct. 1479, 1488-91 (2000); *Stanford v. Parker*, 266 F.3d 442, 459-60 (6th Cir. 2001) (holding that evidentiary hearings are not required under Section 2254 when "the petitioner's claims are either barred from review or without merit"). "An evidentiary hearing is required unless 'the record conclusively shows that the petitioner is entitled to no relief.'" *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)

(quoting *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996)). As discussed above, 30 of 37 of Buckley's subclaims are procedurally defaulted and his only remaining claims are without merit. Moreover, Buckley does not establish that any of the asserted subclaims are "factual predicate[s] that could not have previously been discovered despite the exercise of due diligence," and "would be sufficient to establish by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2). Therefore, it is recommended that Buckley's request for an evidentiary hearing be denied.

## E.   IF BUCKLEY REQUESTS A CERTIFICATE OF APPEALABILITY, IT SHOULD BE DENIED.

A Certificate of Appealability may issue where a movant made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires a movant to demonstrate that "reasonable jurists would find that the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Miller-El v. Cockrell*, 123 S. Ct. 1029, 1039–40 (2003). The reviewing court must indicate which specific issues satisfy the "substantial showing" requirement. 28 U.S.C. § 2253(c)(3); *Bradley v. Birkett*, 156 F. App'x 771, 774 (6th Cir. 2005).

In cases where a district court has rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484. "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

Here, Buckley failed to exhaust many of his subclaims in state court and reasonable jurists would not debate the dismissal of Buckley's Section 2254 petition. Further, Buckley has not made a "substantial showing" as to any claimed denial of his constitutional rights. Moreover, the Court also believes that reasonable jurists would not find its determination on the merits debatable. Therefore, this Court recommends that the District Court deny a Certificate of Appealability.

## VI. CONCLUSION

Buckley petitions the Court for a writ of certiorari under Section 2254. [R. 1]. In his petition, Buckley raises two grounds for relief. His two grounds of relief include 37 subclaims. Of those 37 subclaims, 30 are procedurally defaulted. Buckley fails on the merits on the seven remaining subclaims. Therefore, this Court will recommend the District Court deny Buckley's (1) Section 2254 petition, (2) request for an evidentiary hearing, and (3) Certificate of Appealability, if Buckley so requests.

## VII. RECOMMENDATION

Upon review of the record, and for the reasons stated herein, and in accordance with Rule 10 of the Rules Governing Section 2254 Habeas Cases, **IT IS RECOMMENDED** that:

1.  Buckley's Section 2254 petition [R. 1] be **DISMISSED WITH PREJUDICE**;

2.  Buckley's construed motion to conduct discovery [R. 36] be **DENIED AS MOOT**; and

3.  A Certificate of Appealability be **DENIED** as to all issues raised, should Buckley so request.

*** *** *** ***

The parties are directed to 28 U.S.C. § 636(b)(1) for a review of appeal rights governing this Recommended Disposition. Particularized objections to this Recommended Disposition must be filed within fourteen days from the date of service thereof or further appeal is waived. *United*

*States v. Campbell*, 261 F.3d 628, 632 (6th Cir. 2001); *Thomas v. Ann*, 728 F.2d 813, 815 (6th Cir. 1984).  General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal.  *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004); *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995).  A party may file a response to another party's objections within fourteen days after being served with a copy thereof. 28 U.S.C. § 636(b)(1)(C); Fed. R. Crim. P. 59(b)(1).

Signed December 2, 2022.

Signed By:

_Edward B. Atkins_

United States Magistrate Judge